IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. NICKEL, | ) | CASE NO. 1:11 CV 980 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is this action under 42 U.S.C. § 405(g) by Michael A. Nickel seeking judicial review of a decision of the Commissioner of Social Security denying Nickel's application for a period of disability and disability insurance benefits (DIB).[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4]

---

[1] The parties have consented to my exercise of jurisdiction (ECF # 11), and on that basis United States District Judge Solomon Oliver, Jr. has ordered this matter transferred to me for further proceedings. ECF # 12.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

Pursuant to my initial order,[5] each party has briefed its position[6] and filed supplemental fact sheets[7] and charts.[8] The parties participated in oral argument.[9]

For the reasons that follow, I will find that the decision of the Commissioner is supported by substantial evidence and will, therefore, be affirmed.

## Facts

### A. The decision of the Administrative Law Judge (ALJ)

The ALJ found that Nickel was 35 years old at the time of the hearing,[10] had a high school education,[11] and has not worked since he was laid off in 2003 from a job with a window manufacturer.[12] Most significantly for this case, Nickel has an extensive history of alcohol abuse, as well as heavy use of tobacco, marijuana, Valium, and crack.[13] Nickel

---

[5] ECF # 5.

[6] ECF # 20 (Nickel's amended merit brief); ECF # 21 (Commissioner's merit brief).

[7] ECF # 13 (Nickel's fact sheet).

[8] ECF # 20, Attachment (Nickel's charts); ECF # 21, Attachment (Commissioner's charts).

[9] ECF # 24.

[10] Transcript (Tr.) at 18.

[11] *Id*.

[12] *Id*. at 13. The ALJ noted that although 2003 is after the alleged onset date of 2001, 2001 was the last year that Nickel had reported income.

[13] *Id*. at 16.

testified that he has difficulties with memory loss, neuropathy, balance, insomnia, hypertension, leg pain, and alcoholism.[14]

From the evidence, the ALJ concluded that Nickel has the following severe impairments: cognitive disorder, affective disorders, lower back pain, peripheral neuropathy, history of alcohol abuse, and hypertension.[15] The ALJ further concluded, however, that none of these impairments met or equaled a listing.[16] Moreover, for purposes of making a finding as to residual functional capacity (RFC), the ALJ also determined that Nickel's testimony as to the effects of his impairments was not fully credible, citing, *inter alia*, the fact that Nickel worked after 2001, that he owned his own company for five years,[17] and that in the opinions of numerous consultative and reviewing medical sources, Nickel's impairments present, for the most part, only moderate mental limitations.[18]

Accordingly, the ALJ found that Nickel has the following RFC:

I find that [Nickel] has the capacity for light work, ... except that he can occasionally climb but never with any ropes, ladders, or scaffolds; he can occasionally balance, stoop, kneel, crouch and crawl; he cannot be in work environments with machine and height hazards; and he can only do simple, repetitive tasks/instructions, an increased need for supervision, and he can only tolerate minimal/moderate stress.[19]

---

[14] *Id*. at 15.

[15] *Id*. at 13.

[16] *Id*.

[17] *Id*. at 16.

[18] *Id*. at 15-18.

[19] *Id*. at 15.

After the ALJ adopted the finding of a vocational expert (VE) that Nickel, under the RFC, could not perform any of his past relevant work as a production worker in a window plant, maintenance repairer, meat cutter, and cleaner,[20] the ALJ asked the VE to determine the extent to which light work was available to Nickel with the limitations set forth in the RFC.[21] The VE thereupon testified that, under the limitations contained in the RFC, and taking into account Nickel's age, education, and work experience, Nickel could work as a bench assembler, a wire worker, and an electronics worker – all positions for which there are substantial numbers of jobs in the national economy.[22]

The ALJ then determined that Nickel was not disabled and denied Nickel's application.[23]

**B.   Issues on judicial review**

Nickel raises two issues on judicial review:

- Whether the ALJ erred in his analysis of the opinion(s) of [Nickel's] treating physicians?[24]

- Whether [Nickel] is disabled by pain?[25]

---

[20] *Id*. at 18.

[21] *Id*. at 19.

[22] *Id*.

[23] *Id*. That denial also encompassed a prospective application for supplemental security income (SSI) benefits.

[24] ECF # 20 at 1.

[25] *Id*.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[26]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[27] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[28]

---

[26] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[27] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician/good reason*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[29]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[30]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[31] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[32]

---

[29] 20 C.F.R. § 404.1527(d)(2).

[30] *Id.*

[31] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[32] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[33] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[34] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[35] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[36]

In *Wilson v. Commissioner of Social Security*,[37] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[38] The court noted that the regulation expressly contains a "good reasons" requirement.[39] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[33] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[34] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[35] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[36] *Id.* at 535.

[37] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[38] *Id.* at 544.

[39] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

-7-

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[40]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[41] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[42] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[43] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[44]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[40] *Id.* at 546.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[45] Second, the ALJ must identify for the record evidence supporting that finding."[46] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[47]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[48] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[49] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[50] or that objective medical evidence does not support that opinion.[51]

---

[45] *Wilson*, 378 F.3d at 546.

[46] *Id.*

[47] *Id.*

[48] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[49] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[50] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[51] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[52] The Commissioner's *post hoc* arguments on judicial review are immaterial.[53]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[54]

- the rejection or discounting of the weight of a treating source without assigning weight,[55]

---

[52] *Blakley*, 581 F.3d at 407.

[53] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[54] *Blakley*, 581 F.3d at 407-08.

[55] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[56]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[57]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[58] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[59]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[60] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[61] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[62]

---

[56] *Id.*

[57] *Id.* at 409.

[58] *Hensley*, 573 F.3d at 266-67.

[59] *Friend*, 375 F. App'x at 551-52.

[60] *Blakley*, 581 F.3d 399.

[61] *Id.* at 409-10.

[62] *Id.* at 410.

In *Cole v. Astrue*,[63] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[64]

### *3.    Credibility as to pain*

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[65]

The Social Security Administration has recognized by policy interpretation ruling and regulation that, even in the absence of such objective medical evidence, a claimant may experience pain severe enough to impose limitations on the capacity for work.[66] In such cases, the ALJ must evaluate the credibility of the claimant's allegations of pain and pain-induced limitations.[67]

---

[63] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[64] *Id.* at 940.

[65] *Swain*, 297 F. Supp. 2d at 988-89.

[66] *Id.* at 989, quoting Soc. Sec. Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996), and 20 C.F.R. § 416.929(c)(2).

[67] *Id.*

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[68] A court may not disturb the ALJ's credibility determination absent compelling reason.[69]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[70] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[71]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence." [72] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

---

[68] *Buxton*, 246 F.3d at 773.

[69] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[70] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[71] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[72] 20 C.F.R. § 404.1529(c)(3).

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence.  When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.  The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement.  The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[73]  The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[74]

---

[73] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

[74] SSR 96-7p, 61 Fed. Reg. at 34484.

-14-

**B.     Application of standards**

*1.     The ALJ properly dealt with the medical source opinions.*

Nickel's argument here essentially concerns the ALJ's handling of an opinion given by Tina Oney, a psychiatric and mental health nurse practitioner, which opinion was then signed by Karen Brocco, M.D., Nickel's treating psychiatrist.[75] Nickel contends that the ALJ's decision to discount Oney's opinion was not reasonable because Oney's notes contain a full explanation for her opinion, and the record shows that Oney and Dr. Brocco have "a long-standing history of treatment and observation of [Nickel]."[76]

The Commissioner, for his part, maintains that a "nurse" is not considered an "accepted medical source" under the regulations such as would be entitled to status as the medical opinion of a treating source.[77] Moreover, the Commissioner states that the opinion at issue was given "only a month" after Oney and Dr. Brocco began treating Nickel, although the treating relationship went forward from that point.[78]

First, as Nickel agreed during the oral argument, there is no evidence in the record that Dr. Brocco ever independently examined Nickel. Rather, it appears that Dr. Brocco simply "signed off" on Oney's RFC evaluation. That act alone does not make Oney's RFC finding

---

[75] ECF # 20 at 8.

[76] *Id.*

[77] ECF # 21 at 10 (citing regulations).

[78] *Id.*

-15-

of January 21, 2008. into the opinion of Dr. Brocco under any theory of agency, and so entitled to controlling weight unless satisfactory reasons to the contrary are provided.[79]

Seen thus as only a medical source whose opinion should be considered, I find that the ALJ did consider Nurse Oney's opinion within the meaning of the applicable rubric and then provided clear, reviewable reasons for assigning it some limited weight.[80] In particular, I note that the ALJ pointed to the fact that the other evidence did not show that Nickel's impairments were "marked" and "extreme," such as Nurse Oney opined.[81] In that regard, I note, as does the Commissioner, that the findings of consultative examiner Deborah Koricke, Ph.D., to which the ALJ gave "great weight," were that Nickel's impairments imposed only "moderate" difficulties.[82]

Accordingly, for the reasons given, I find that the ALJ's treatment of the opinion of Nurse Oney is supported by substantial evidence and that, therefore, the Commissioner's decision in this regard is affirmed.

---

[79] I note that authority in other circuits recognize that a nurse practitioner – as distinct from an RN – could be considered an acceptable medical source if the nurse practitioner worked under such close supervision of a physician as to be considered an agent. *See*, *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). It appears, however, that no evidence was developed as to any agency relationship between Oney and Dr. Brocco such as might make Oney into a treating source for purposes of the regulation under the reasoning of *Gomez*. (Actually, Nickel testified that he saw Oney far more often than Dr. Brocco. *See*, Tr. at 40). I do note additionally in this regard that a nurse practitioner is not, as the Commissioner seems to suggest, the same thing as an RN.

[80] Tr. at 17.

[81] *Id.*

[82] *Id.*

### *2.  The ALJ properly found Nickel less than fully credible as to pain.*

Nickel here maintains that based on his own testimony of severe pain in his lower extremities, as well as objective medical evidence confirming bilateral neuropathy that he contends Michael A. Harris, M.D., a treating source, classified as "severe," the ALJ had no basis for discrediting his testimony of disabling pain.[83]

I note first that the ALJ did credit the existence of the neuropathy in his listing of recognized impairments. I note further that the issue regarding neuropathy, which the ALJ agreed could produce the pain complained of, was whether Nickel was credible as to his claimed level of pain. Notably, the report from Dr. Harris, who is a certified specialist in pain medicine,[84] noted that the "severe" pain in both legs – cited here by Nickel – was "fairly well controlled" by medication.[85] Further into that report, Dr. Harris also observed that his neurological examination yielded essentially normal results, with no bilateral pain in the legs from straight leg raise.[86]

Although that portion of the record was not specifically cited by the ALJ, the particular finding of Dr. Harris that any "severe" pain was "fairly well controlled" by medication does not offer much hope that a remand to more directly address the whole of Dr. Harris's report under the treating physician rule would be of any real benefit to Nickel.

---

[83] ECF # 20 at 10.

[84] *Id*. at 438.

[85] *Id*. at 436.

[86] *Id*. at 437.

Accordingly, although the ALJ probably should have directly identified Dr. Harris as a treating source and then assigned weight to that opinion consistent with the rubric, I find that the error, if any, was harmless because the unconsidered evidence was merely cumulative of the other, cited evidence otherwise supporting the Commissioner's decision.[87]

For the foregoing reasons, I find that there was no prejudicial error from the ALJ not recognizing Dr. Harris as a treating source and clearly assigning weight to his opinion. Thus, I conclude that the Commissioner's RFC finding is supported by substantial evidence and is, therefore, affirmed.

## Conclusion

As related above, I find that the decision of the Commissioner to deny Michael Nickel's application for benefits is supported by substantial evidence, and that decision is, therefore, affirmed.

IT IS SO ORDERED.

Dated: September 28, 2012               s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

---

[87] In *Molina v. Astrue,* 674 F.3d 1104 (9th Cir. 2012), the Court engaged in an extensive discussion of harmless error as it concerns situations such as this one where the evidence not directly addressed by the ALJ was merely cumulative of other evidence that was expressly discussed. Moreover, this case, in addition to presenting a situation where Dr. Harris's opinion was cumulative of other opinions on the same subject, also presents a circumstance where Dr. Harris's opinion fully supports the Commissioner. *Molina* suggests that harmlessness must be analyzed in the context of the case, rather than by some rigid, *per se* rule of prejudice. *Id.* at 1121. *See also*, *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 661 (6th Cir. 2009).